**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **BENDERLOCH TECHNOLOGIES LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **AMCREST TECHNOLOGIES LLC,** <br><br> Defendant. | Civil Action No.: 4:21-cv-3883 <br><br> **TRIAL BY JURY DEMANDED** |

**COMPLAINT FOR INFRINGEMENT OF PATENT**

Now comes, Plaintiff, Benderloch Technologies LLC ("Plaintiff" or "Benderloch"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant Amcrest Technologies LLC (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No. 7,272,296 ("the '296 Patent" or the "Patent-in-Suit"), which is attached hereto as Exhibit A and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

**THE PARTIES**

2. Plaintiff is a Texas limited liability company with its principal place of business at 3571 Far West Blvd. #3143, Austin, TX 78731.

3. Upon information and belief, Defendant is a corporation organized under the laws of Texas, having a principal place of business at 16727 Park Row, Houston, TX 77084. Upon

information and belief, Defendant may be served with process c/o Usuf Ravat, 7941 Katy Fwy # 178, Houston, Texas 77024.

## JURISDICTION AND VENUE

4.   This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

5.   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

6.   This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

7.   Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being formed in this District.

8.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its incorporation, and regular and established place of business in this District.

## FACTUAL ALLEGATIONS

9.   On September 18, 2007, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '296 Patent, entitled "Navigating to a Particular Program or Specific

Time Increment in a Personal Video Recorder" after a full and fair examination. The '296 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

10. Plaintiff is presently the owner of the '296 Patent, having received all right, title and interest in and to the '296 Patent from the previous assignee of record. Plaintiff possesses all rights of recovery under the '296 Patent, including the exclusive right to recover for past infringement.

11. To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

12. One claimed invention in the '269 Patent pertains to a method for playing recorded video programming. Ex. A at Col.7:55.

13. As identified in the '269 Patent, prior art systems had technological faults. See Ex. A at Col.1:13-57.

14. More particularly, the '269 Patent identifies that the prior art provided that after recording of the broadcasted multimedia presentation onto a storage medium is commenced, a user could begin playback of the recorded portion of the multimedia presentation. Ex. A at Col.1:15-18.

15. If chosen, a user could pause playback of the multimedia presentation while the remainder of the multimedia presentation was still being recorded from the broadcast. Ex. A at Col.1:18-21.

16. The user then could commence playback of the multimedia presentation from where it was paused. Ex. A at Col.1:21-23.

17. Previous personal video recorders incorporated trick mode playback enabling a user to fast forward and rewind a recorded multimedia presentation. Ex. A at Col.1:24-26.

18. These systems were not convenient for accessing a particular portion of the presentation, however, because a user often was required to scan through a substantial amount of recording until a particular portion of the multimedia presentation was found. Ex. A at Col.1:26-30.

19. This was especially time consuming when a user wished to skip from the end of a multimedia presentation back to the beginning, or from the beginning to the end. Ex. A at Col.1:30-33.

20. Other personal video recorders provided an onscreen display that tracked a present location in the presentation as trick modes are performed on the presentation. Ex. A at Col.1:34-36.

21. The onscreen display was typically limited to a cursor displayed within a track. Ex. A at Col.1:36-38.

22. The position of the cursor within the track moved to reflect a present location within the presentation. Ex. A at Col.1:38-40. However, the movement of the cursor was not adequate to precisely determine the present location within the presentation, nor to provide program information helpful to navigating through multiple presentations. Ex. A at Col.1:40-44.

23. Other personal video recorders allowed a user to bookmark a multimedia presentation where a user last stopped the presentation. Ex. A at Col.1:45-47.

24. Stopping the multimedia presentation whenever a user wished to bookmark a particular sequence was also inconvenient and irritating. Ex. A at Col.1:47-49. Hence, bookmarking had limited use for finding a specific portion of a multimedia presentation. Ex. A at Col.1:49-51.

25. Further, bookmarks are typically erased after re-play of a multimedia presentation is commenced. Ex. A at Col.1:51-53. Hence a user only can use the bookmark once to jump to a bookmarked portion of the multimedia presentation. Ex. A at Col.1:53-55. After one use, a user typically had to revert to rewinding and fast forwarding through the multimedia presentation in order to review the particular sequence again. Ex. A at Col.1:55-57.

26. To address these specific technical problems, Claim 1 in the '269 Patent comprises a non-abstract method for playing recorded video programming.

27. Claim 1 of the '269 Patent states:

"1. A method for playing recording video programming, characterized by the steps of:
 displaying a first time line which is sub-divided into a first plurality of equal time length increments and a second time line which is subdivided into a second plurality of equal time length increments wherein said first and second time lines are displayed at the same time, and the first plurality and second plurality of time increments are different time lengths;
 playing back recorded programming from a storage medium, wherein when the first time line is selected, said programming is either jumped ahead or backwards by a time increment corresponding to said first time line in response to a user command, and
 playing back said recorded programming, wherein when the second time line is selected, said programming is either jumped ahead or backward by a time increment corresponding to said second time line in response to said command." Ex. A at Col.7:55-Col.8:17.

28. Claim 1 of the '269 Patent is a practical application and inventive step of technology that address these aforementioned specific computer-centric problems.

29. Specifically, to address the with the computer-centric drawbacks/problems of previous methods for accessing recorded video that were unhelpful when navigating through presentations, and were unhelpful due to erased bookmarks, the method of Claim 1 in the '296 patent requires (a) displaying a first time line which is sub-divided into a first plurality of equal

time length increments and a second time line which is sub-divided into a second plurality of equal time length increments wherein said first and second time lines are displayed at the same time, and the first plurality and second plurality of time increments are different time lengths; (b) playing back recorded programming from a storage medium, wherein when the first time line is selected, said programming is either jumped ahead or backwards by a time increment corresponding to said first time line in response to a user command, and (c) playing back said recorded programming, wherein when the second time line is selected, said programming is either jumped ahead or backward by a time increment corresponding to said second time line in response to said command.

30. These specific elements of first and second timelines that are sub-divided into time increments displayed simultaneously, but the increments being different for the first timeline and the second timeline, then playing back the video along a either the first or second timeline to enable the user to jump ahead or backward corresponding to the respective timeline, <u>as combined</u>, accomplish the desired result of obviating the need to use unhelpful bookmarks and obviating the need to use unhelpful tracking cursors. Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of video display playback systems. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

31. Claim 1 of the '269 Patent provides meaningful details on *how* to implement its method, and thus adds something inventive. Namely, the USPTO indicated that the prior art does not disclose "a first time line which is sub-divided into a first plurality of equal time length increments and a second time line which is subdivided into a second plurality of equal time length increments wherein said first and second time lines are displayed at the same time, and the first plurality and second plurality of time increments are different time lengths." See Ex. B at Page 2. Thus, the "*how*" of the method of Claim 1 corresponds to the USPTO's reasons for allowance.

32. Specifically, "*how*" the method operates in an inventive way is due to a first time line which is sub-divided into a first plurality of equal time length increments and a second time line which is subdivided into a second plurality of equal time length increments wherein said first and second time lines are displayed at the same time, and the first plurality and second plurality of time increments are different time lengths and programming that is played back, wherein an amount of time said programming is either jumped ahead or backward, in response to a command corresponds to the length of time increment corresponding to a time line that is selected.

33. Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

34. These specific elements of Claim 1 of the '269 Patent were an unconventional arrangement of elements because the prior art methodologies would simply use cursors and bookmarks. Claim 1 of the '269 Patent was able to unconventionally generate a method for accessing and playing recorded video. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

35. Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 in the '269

Patent provides a playing recorded video that would not preempt all ways of accessing the video because the playback is based on the use of two separate time lines having different incremental time segments, any of which could be removed or performed differently to permit a method of accessing or playing recorded video. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

36. Based on the allegations, it must be accepted as true at this stage, that Claim 1 of the '269 Patent recites a specific, plausibly inventive way of playing or accessing recorded video and using specific protocols rather than the general idea of fast-forwarding or rewinding a video stream. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

37. Alternatively, there is at least a question of fact that must survive the pleading stage as to whether these specific elements of Claim 1of the '269 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

38. Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '269 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 1 of the '269Patent. Specifically, Defendant makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 1 of the '269 Patent.

## DEFENDANT'S PRODUCT(S)

39. Defendant offers solutions, such as the "Blue Iris V5" system (the "Accused Product")[1], that enables accessing or playing recorded video. A non-limiting and exemplary claim chart comparing the Accused Product of Claims 1-3 of the '269 Patent is attached hereto as Exhibit C and is incorporated herein as if fully rewritten.

40. As recited in Claim 1, a system, at least in internal testing and usage, utilized by the Accused Product practices displaying a first time line which is sub-divided into a first plurality of equal time length increments and a second time line which is sub-divided into a second plurality of equal time length increments wherein said first and second time lines are displayed at the same time, and the first plurality and second plurality of time increments are different time lengths. See Ex. C.

41. As recited in one step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product practices playing back recorded programming from a storage medium, wherein when the first time line is selected, said programming is either jumped ahead or backwards by a time increment corresponding to said first time line in response to a user command. See Ex. C.

42. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product practices playing back said recorded programming, wherein when the second time line is selected, said programming is either jumped ahead or backward by a time increment corresponding to said second time line in response to said command. See Ex. C.

---

[1] The Accused Product is just one of the products provided by Defendant, and Plaintiff's investigation is on-going to additional products to be included as an Accused Product that may be added at a later date.

43. The elements described in the preceding paragraphs are covered by at least Claim 1 of the '269 Patent. Thus, Defendant's use of the Accused Product is enabled by the method described in the '269 Patent.

## INFRINGEMENT OF THE PATENT-IN-SUIT

44. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

45. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing, either literally or under the doctrine of equivalents, the '269 Patent.

46. Defendant has had knowledge of infringement of the '269 Patent at least as of the service of the present Complaint.

47. **Direct Infringement.** Defendant has directly infringed and continues to directly infringe at least one claim of the '269 Patent by making, using, at least through internal testing or otherwise, offering to sell, selling and/or importing, without limitation, the Accused Product without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '269 Patent, Plaintiff has been and continues to be damaged.

48. **Induced Infringement.** Defendant has induced others to infringe the '269 Patent by providing the Accused Product and encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement either literally or under the doctrine of equivalents.

49. **Contributory Infringement**. Defendant actively, knowingly, and intentionally has been and continues materially contribute to their own customers' infringement of the '269 Patent, literally or by the doctrine of equivalents, by selling the Accused Product to their customers for

use in end-user products in a manner that infringes one or more claims of the '269 Patent. Moreover, the Accused Product is not a staple article of commerce suitable for substantial non-infringing use.

50. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '269 Patent, pursuant to 35 U.S.C. § 271.

51. Defendant has committed these acts of infringement without license or authorization.

52. As a result of Defendant's infringement of the '269 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

53. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

54. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim chart depicted in Exhibit B is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

55. Plaintiff demands a trial by jury of any and all causes of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a. That Defendant be adjudged to have directly infringed the '269 Patent either literally or under the doctrine of equivalents;

b. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '269 Patent;

d. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: November 29, 2021

Respectfully submitted,

*/s/ Papool S. Chaudhari*
Papool S. Chaudhari
PRA Law
State Bar No. 24076978
2800 Bartons Bluff Lane #1902
Austin, TX 78746
(214) 702-1150
papool@pralawllc.com

Together with:

SAND, SEBOLT & WERNOW CO., LPA

Howard L. Wernow (*Pro hac vice forthcoming*)
Aegis Tower – Suite 1100
4940 Munson Street NW
Canton, Ohio 44718
Telephone: (330) 244-1174
Facsimile: (330) 244-1173
Email: howard.wernow@sswip.com

ATTORNEYS FOR PLAINTIFF